The Honorable The United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Please be seated. Mr. Solomons, we're happy to hear you. Okay. Good morning and may it please the Court. This is a black long appeal brought by an employer and it raises two, fundamentally raises two issues. The first of which is whether the Labor Department can come here and defend the rights of the Virginia Guarantee Fund to insist upon the application of a State Bar Date so that claims against the fund would be barred according to Virginia law. Second of all, whether the Labor Department has the authority to overrule this Court's decision in Matney v. Tracefort Coal Company and the Supreme Court's decision in Greenwich Collieries to change the burden of proof for establishing the identity of a responsible party. Now, I think, you know, first of all, one thing that really struck me as I was preparing for this argument is I don't understand why the Labor Department is taking this position. They would be better off if they said, and there's plenty of reasons for doing it, they said the Guarantee Fund is liable for these claims. Here they've got older public insurance companies standing behind them. There's going to be plenty of cases where nobody's standing behind them and so they're just going to eat those claims in the Black Long Trust Fund and it's not necessary. Also, the Guarantee Fund can waive this bar date for Federal claims. It doesn't work for Federal claims. They waived it or were told they had to waive it in this Court's decision in Boyd v. Stephenson Coal Company. They waived it in a fair number of cases that I've seen in my own practice and the Labor Department can't waive for them. So, it's a mystery to me. I mean, they have a law firm that does this down in Abingdon and they waive these things. I just, I think in the last week saw two cases where the Guarantee Fund had a bar date. As you know, the bar date is geared toward the way State claims work. In Federal claims, you can file a Black Long claim, you know, 25 years after you leave the mines and it would be impossible to file it before then even if it relates back to employment that occurred many years before. And so, it makes perfect sense in that context for the State and you pointed out in the Boyd v. Stephenson case that, you know, impossibility is a significant factor in the evaluation of how to apply these bar dates. And by bar date, I assume that you know what I mean. It just says the claim. So, just explain to me in simple terms what the problem is, what problem do you find with the statute of limitations prohibition and with the Virginia Guarantee Fund that it only, the Guarantee Association, that it only pays claims filed within a reasonable amount of time? Well, first of all, it's not that reasonable for a Black Long claim except under Virginia law. But let me say, let me respond this way. It's not a statute of limitations. It's a bar date. It's waivable if it doesn't work and you've made them waive it in at least one decision in this Court. But here's the thing. It's more important here and I think this is a relatively simple case looking at black letter law and decisions. The bar date says that the Guarantee Fund is not going to be responsible, unless it waives, for Black Long claims under the federal program that's filed, that are filed after whatever that date is. And of course, this case is way beyond that date. And the Labor Department said that's okay because the Guarantee Fund is not an insurance company. That's their number one argument. And their number two argument is that since it's not an insurance company, it doesn't have to, you know, the bar date is perfectly fine. Now, let me see if it's an insurance company. What it is, it's a reinsurer. Old Republic has reinsurers. Reinsurers stand behind the primary insurer so that if the primary insurer, well, in these kinds of cases, goes insolvent, then the reinsurer steps in. And the reason every single state has a guarantee association for the payment of claims, not just Black Long, but auto accident, you name it, everything, that an insolvent insurer is faced with is because it's an important thing for the insurance industry. And one of the things, the ALJ and the Benefits Review seem to think this is some kind of state agency. It isn't. It's an insurance facility. It is funded exclusively by the insurance industry and maybe some escheat money for claims they can't pay. And it is run exclusively by insurance executives. It is a reinsurer. It is the reinsurer for the voluntary market in workers' compensation. The voluntary market is the low-risk market. And what happened here is this company, Rockwood, was an extremely, did a lot of extremely risky things. It was a reckless insurer. And it depopulated what's called the residual market. It took companies out of there because the rates are higher in the residual market. It took those companies out. And it told them that we'll give you cheaper insurance for your workers' compensation. And they did that. And they were taking risks they shouldn't have taken. And everybody in the industry knew they were not going to make it. And they didn't. And the reason you have a guarantee fund, the state charters it, doesn't run it. It's not much to do with it. If we hold that the guarantee fund is on the hook for claims, how long after the bar date do we run a risk in sort of playing havoc with the system and turning it upside down and exposing the guarantee fund to claims that it had no reason to anticipate? Well, first of all, they already do anticipate black lung claims because they waive the bar date. Going all the way back to your decision, but I think they've always waived the bar date sometimes, not always. And the thing is that guarantee fund covers all the insurance risks in lots of markets and it's huge. You're not going to upset anything because by putting the Rockwood, I think Rockwood's the only Virginia insurer in workers' comp that's ever gone belly up. And that was a while ago. There aren't that many claims that are affected by the Rockwood insolvency. So, no, you're not going to do anything bad. And the thing is that that's something they accept. These are insurance companies. These are insurance people, not state people who are running this thing. And they do it because it is very important to have the public and employers and persons who are insured to have to know that that insurance is going to be there if the primary company is unable to pay it. It's a very important public facility. Every state has it. Every state pays. The reason you have a bar date, which covers everything, auto and everything, is most things, but federal black lung is different, most things the claim matures pretty quick after an insolvency. You've got an automobile accident. You've got a state workers' compensation claim. You've got a property damage claim. I don't know if it covers property. But it covers a lot of things. It's got a whole list in their statute. It's not going to upset anything. Is there a danger in pushing a state agency into a more prominent role in what is, after all, a federal program with a federal sequence? They're in the federal program. They reinsure federal black lung risks. They're already there. I see. Now, I can't speak. To a certain extent. I can't speak for them. I don't see any risk at all. It's not a big deal given the whole body of liability that they take on. It's a rich fund. It's an association. Let me go back to the Labor Department's arguments because, you know, it goes beyond this. It's not a question of, you know, I know you want to do the right thing, but it's also a statutory thing that we're talking about here. And so Labor Department is not an insurance company. So I'm looking at 30 U.S.C. Section 933, and that defines an obligation of an employer that's getting or an insurer that's providing coverage. And it says that the employer is required to provide this coverage either by qualifying a self-insurer or insuring and keeping insured. I don't like to read to you, but it's this. I can't state it more powerfully. Insuring and keeping insured the payment of such benefits with any stock company or mutual company or association or with any other person or fund, including any state fund, while such company, association, person, or fund is authorized under the laws of the state to insure workers' compensation. If this guarantee fund doesn't fit in that definition, I don't know what does. It clearly does. And now there's a second piece to this. Labor Department says, they say it's not an insurer. I think that's a crazy statement. But, you know, there's more to it than that because the, did you know, the Seventh Circuit, Fifth Circuit, Eleventh Circuit all held that the McCarran-Ferguson Act's reverse preemption provision doesn't apply in Black, Long, and Longshore. So in other words, because these are statutes that govern the regulation of And so the Black, Long Act, which I'm going to 20 U.S.C., excuse me, 30 U.S.C. 933B provides that, you know, you've got to buy this insurance and you can't, you know, and the insurance is governed by the Department of Labor's regulations that will define what has to be in insurance policies. And the Department of Labor's regulations say you cannot rely upon, and I'm looking at 726.203, 726.203ABC, I guess it's B6, that nothing in this section shall relieve an operator or carrier the duty to comply with state workers' compensation laws, but except insofar as the state law is in conflict with the federal law. And here it is in conflict. And, you know, the insurance that you buy in any state for, where it's comp or lots of things, has as a part of the package of what you're buying, and the premium goes to pay for it. I mean, the liability follows the premium. The premium that a company pays to its carrier goes mostly to the carrier and some goes to the fund. And that's the outline of the liability that's being taken on here. They can't deviate. The Department of Labor doesn't have any authority. I'm saying, and I don't know what the Labor Department's doing. They're here arguing for the fund. I don't think they have standing to do that. The fund waives this stuff. The fund understands what its obligations are. They're not here because, although we asked six times, the Labor Department refused to allow us to add those. The Wilder Coal Company and its insurance program is parties. They wouldn't let us do it. We can't force them in there. This is not federal rule of civil procedure that we're under. If the guarantee fund is, or the association is an insurance carrier, then is the time bar preempted? It's preempted. I think it's very clear that it's preempted. I'm kind of out of time almost, but I want to say also, it doesn't seem to be any doubt in my mind. You know, you look at the Department of Labor's regulations, and what they do is they put a totally impossible, un-carryable burden on employers to prove that somebody else is liable. That's not what the Supreme Court said in Greenwich Collieries. In Greenwich Collieries, and this Court in Matinee also, and the Labor Department said when they did this, they were overruling you. They're only under, I don't know what authority, since the burden of proof comes from the APA. They have no authority to regulate under the APA. But it's just too much trouble for them. Thank you, Mr. Solomon. You have some rebuttal time as well. Okay, thank you. Ms. Herman, we'd be happy to hear from you. Good morning, Your Honors. May it please the Court. My name is Victoria Herman. I'm here today on behalf of the respondent, Ms. Dolores Mullins, to ask this Court to affirm the decision by the judge and the board determining that RBF is the responsible operator in this claim. The employer makes two general arguments. The first argument that they make is that the BLBA regulations require that the liability because the Guarantee Association would act as an insurance agency. The language of the Guarantee Act, under which the Guarantee Association is promulgated, says that a covered claim will not include any claim filed after the final date. And I think the bar date, which was set up in 1992, would more than preclude any claim being filed by Mr. Mullins. It was originally in 2009, almost 17 years later, from being covered. RBF never contests that the claim is beyond the bar date. They simply say that because it should be considered an insurance agency, the bar date doesn't exist for their purposes. Well, the Virginia Court of Appeals in Mounts alluded to the Virginia Guarantee Association was barred by statute for considering Mounts claims, and they weren't authorized to pay it. Isn't that the same situation here? I think it is. The Guarantee Association doesn't have to pay it because it is so far beyond the bar date. The Guarantee Association was set up to pay specific claims, claims that were brought within a specific period of time. And yes, I think it is possible for the Guarantee Association to waive the bar date. And I think that has been done, as Mr. Solomon stated. But I think the problem with doing that just kind of as a blanket action in black loan claims is that this isn't just a one-time thing. If we waive that bar date here, then we're going to have to waive that bar date for every black loan claim that gets brought up basically in the state of Virginia under the Guarantee Fund, and that is thousands and thousands of claims. The Guarantee Association was set up to provide coverage for a finite period of time for a finite group of claims. It wasn't set up to be an unlimited resource for people to kind of pull out of the hat and say, well, it can't be us, so it should be the Guarantee Association, because they're supposed to cover stuff when the insurance company is no longer a viable option. The director's responsibility in black loan claims is to identify and notify the responsible operators. And I think the employer's argument that not bringing the association in as a party is kind of misleading. The director's office fulfilled their burden of proof. That burden of proof never moved. Now, if the employer determines that they don't think they should be the responsible operator, they have the ability to provide evidence. And I think the idea that they didn't get that chance because there wasn't another party brought in is incorrect. They had that opportunity as long as they made that argument to the director within the prescribed period of time. But they didn't bring in any evidence. There was no evidence that the Guarantee Association should have been responsible. And I think if we look at the bar date, even if we were going to consider it an insurance policy, we can't expect insurance companies to pay claims after the premiums stop. The insurance claims are for the period of time for which that insurance policy is supposed to cover. And at this point, even if we did consider it insurance, the date has long passed, so the Guarantee Association is no longer a viable option. The third part of the analysis on the director's part, as far as their burden of proof, is to make sure that they are notifying and identifying a party who has the ability to pay. And at that point, it's beyond the bar date, so there isn't an ability to pay because that claim isn't covered any longer. So at that point, the director has fulfilled their burden of proof by identifying a responsible operator who has the ability to pay and who was the last employer for a period of a year. So I think the director more than met their burden and that that bar date, it isn't preempted. I see I'm out of time. Good luck. Can I make a brief conclusion? Thank you. Thank you. Ms. Fiebig. Good morning, and may it please the Court. I'm Rebecca Fiebig on behalf of the Director of the Office of Workers' Compensation Programs at the U.S. Department of Labor. And I would like to respond to the petitioner's arguments first regarding the preemption analysis as to why the statutory bar date found in the Guarantee Association should not be applied in this case. The Black Lung Regulations contain an explicit definition of what constitutes an insurance carrier, and insurance carrier is defined as an entity that is authorized under the laws of the state to ensure workers' compensation liability. And if we look at the Guarantee Act, the Virginia Guarantee Act, Section 38.2-1606 contains an exhaustive list of the association's duties and rights. There are eight items that the association is required to do. There are seven items that the association is permitted to do. And nowhere in that list of items is there found any authorization to issue workers' compensation policies, which it's not surprising that looking at that act, the Virginia Supreme Court has held that the Guarantee Association is not in the business of writing insurance contracts. So under the Black Lung Regulations, there's simply no reason to believe that the Guarantee Association would qualify as an insurer and therefore be subject to 20 CFR Part 726, which would preclude the association from imposing any additional conditions, such as something like this filing deadline. Well, but in 1997, when there were proposed amendments to the BLBA, didn't the Department of Labor indicate that where an insurance company had been declared insolvent and there was no successor, meaning either another insurance company or a state Guarantee Association available to pay benefits, then the operator's prior purchase of insurance is not sufficient? It seemed to be, in looking at that, that perhaps the Department of Labor did contemplate that a Guarantee Association would be a carrier to cover a claim such as this one. We certainly do contemplate that the Guarantee Association may be required to cover some claims. But in that same preamble – But if it's an insurance carrier, then isn't preemption an issue here? It doesn't have to be an insurance carrier in order to cover claims. And in that same preamble, that same regulatory preamble, we recognize that Guarantee Associations are considered to be liable to the extent prescribed by their own state law. So I think Mr. Solomons is correct that it's something akin to a reinsurer, but that doesn't mean that it is an insurance carrier that is covered by the Black Lung Regulations because although it does serve a function, and I believe the stated purpose of the Act is to provide some compensation in the situation where an insurance carrier has become insolvent, some relief. The bottom line in these cases is to make sure that the minor and the survivorship receive the funds that they're due under the BLBA. If we were to essentially move the State Guarantee Association out of the picture, and would we in some way jeopardize one of the sources that is used to compensate minors and their survivors? Well, we certainly wouldn't ask the Court to move the Guarantee Association out of the picture, but we would ask the Court to respect the boundaries that the Virginia Legislature has drawn as to what ought to be covered. But regardless of whether the Guarantee Association is liable, or in the event that the Guarantee Association is not liable, there are still several different sources from which a minor can receive benefits. So if there were no prior coal mine operator that qualified under the regulations in this case, then liability would transfer to the Black Lung Disability Trust Fund. So in no event would the Mullins' go without a remedy. The question is, where should that remedy be found? Well, then it's true that you followed the statutory scheme and the regulations and came to the conclusion that R, B, and F is a responsible party, and they can pay the claim. Isn't that what happened here? That's correct. So you don't need the Guarantee Company in this situation, because it's not insolvent. That's correct. R, B, and F, right, we made a determination. And the way that the regulations are set up, the Department has the initial burden of designating a responsible operator that meets all of the regulatory criteria, which includes a list of several things, but one of them is that they are capable of paying benefits. And in the situation where we designate someone other than the minor's most recent employer, we also have a duty to explain why. So in this case, we noted that one of the entities that had more recently employed Mr. Mullins only employed him for a few months, which is not enough time under the regulations to qualify. Another of the entities besides Wilder Coal had also gone out of business, and its insurance carrier had also or it didn't actually have insurance at the time. Suppose you have a situation where initially Wilder Coal can't pay because it's now insolvent, and then Rockwood can't pay because the insurance company is now insolvent, and the Virginia Guarantee Association can't pay because of the bar date. And then suppose R, B, and F had become insolvent for the time being. What happens then? If R, B, and F, and that's actually one of the items that R, B, and F was permitted to approve under Section 20 CFR, Section 725.495, which is the regulation that the petitioner alleges is an improper. Just tell me what happens if R, B, and F was insolvent, and what happens at that point? Sure. If R, B, and F had been found insolvent or proven that it was insolvent, then either if the case was still pending before the district director, we may have the opportunity to name an even earlier employer if one existed that met the regulatory criteria, or if the case had at that point moved on to the administrative law judge level, then the Black-Blind Disability Trust Fund would be required to pay the claim. And that distinction is actually one important reason why the department has to be somewhat judicious in choosing who we're going to name as a designated responsible operator in the initial processing of claims. The department essentially only gets one shot to get it correct. Once the case has gone through that initial adjudication and moved on to the administrative law judge level, if we're incorrect, if we don't do our due diligence and we name a company that is, in fact, unable to pay, then the Black-Blind Disability Trust Fund is going to be responsible for paying benefits in that case. So the suggestion that despite this clear statutory prohibition on the Guarantee Association accepting liability in this case that was recognized by the Virginia Court of Appeals in Mounts, the suggestion that we should have named them anyway in the hope that, you know, perhaps they would have waived. If we required the Guarantee Fund to pay, tell me what kind of practical fallout would there be or what kind of practical damage do you think there would be? I think it could be very concerning. I don't think it's accurate to suggest that this would only be limited to claims against Rockwood. I don't think there's a principled reason that the court could hold this only applies, that the bar date, you know, only is excusable in black lung claims. I think that the natural consequence of that holding would be that the bar date is essentially irrelevant. As I've already discussed, I believe that the Guarantee Association is not an insurance carrier under the black lung regulation. So the suggestion that the reason for doing away with the bar date is the preemption angle is simply not supported by the law. So the only basis that the court could have for or that the petitioner suggests that the court could have for ruling that the bar date doesn't apply is to suggest that it's impossible for the claimant to comply with the bar date because the disease did not occur until years after the bar date passed. And I think the ramifications of that would be enormous both for federal programs and on the state level because if a condition is impossible, if that impossible condition must be void, then it's going to be void as to everyone who would seek to file a claim after the bar date. Finally, I'd like to quickly mention that the regulation that imposes the burden of proof or that identifies the burdens as to the designation of a responsible operator does not seek to overrule this court's decision in Trace Fork. It's actually consistent with the court's decision in Trace Fork. The court was evaluating a prior version of the regulation and noted that there was no clear I see I've run out of time, may I finish my point? Go ahead and finish your sentence. The court noted there was no clear allocation of the burden of proof in that case and so we endeavored in the subsequent rulemaking to explain exactly how the burden should be allocated going forward pursuant to our explicit statutory authority in Section 932H of the Act. Thank you. Thank you. Just a few points. First of all, I don't understand what Mrs. Herman is doing here. Her client stands to lose nothing. He gets his benefits. It's over as far as they're concerned. And so the argument is just piling on and unnecessary. Also, the Labor Department is making a lot of arguments for the guarantee fund. We asked six times. It's all in the record. Six times we asked to bring them in Wilder and their insurance, and they wouldn't do it. So we don't know what their view is. We know they've waived. No one disputes that in other cases. So we're arguing about something which is kind of hypothetical, whereas at the same time what's not hypothetical is the fact that that bar date is preempted under the federal law. And so, I mean, Ms. Fiebig is talking about how terrible it could be. Bar date isn't preempted under state law. It's just preempted under this law because this law says so. I think really what happened here is the Department of Labor made a mistake. And now they're standing here and trying to defend this mistake, and it has bigger consequences than they probably thought it did. And the big mistake was not letting us have them add this company and its insurer and the Virginia Guarantee Fund. For all we know, the Virginia Guarantee Fund may have agreed to take the claim, and it would be long gone years ago. But she said you could have brought them in. We can't. This isn't the federal rules. We cannot add a party. Only the Labor Department can add a party. We cannot do that. We asked them to six times. We took the miner's deposition. He testified that he worked there last. He worked there for a sufficient period of time. And I don't know what more we could do. You know, the burden of proof, and we go back to that question, the burden of proof that's imposed in the Department of Labor's regulations not only violates Greenwich Colliery's by a mile, we can't carry it because they won't let us do anything. There's no third-party discovery in these cases. There's no capability. There's no ability to enforce subpoenas. I guess you could try to go to district court to try to enforce. You can't get discovery. And in this case, we don't need it either. All we needed was the party there to say what they wanted to do. And they made a mistake, and they won't own up to it. Thank you, sir. We'll come down and recouncil and move into our next case.
judges: J. Harvie Wilkinson III, Henry F. Floyd, Irene M. Keeley